IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00912-MJW

EDGE CONSTRUCTION, LLC,

Plaintiff,

v.

OWNERS INSURANCE COMPANY,

Defendant.

---

ORDER ON
**(1) PLAINTIFF EDGE CONSTRUCTION, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES 1-6
(Docket No. 60);
(2) PLAINTIFF EDGE CONSTRUCTION, LLC'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(Docket Nos. 61 and 65 - filed under restriction);
(3) DEFENDANT OWNERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR DETERMINATION OF LAW
(Docket No. 62);
and
(4) PRETRIAL MOTIONS FOUND AT DOCKET NOS. 85, 86, 88, 100, 101, 102, 103, 104, 105, 106, 107, and 108**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court for all purposes pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c) upon consent of the parties and the Order of Reference Upon Consent to Jurisdiction of Magistrate Judge issued by Chief Judge Marcia S. Krieger on May 8, 2014 (Docket No. 17; see Docket No. 15 - Consent).

Now before the court are the following three dispositive motions: (1) Plaintiff Edge Construction, LLC's Motion for Partial Summary Judgment on Defendant's

Affirmative Defenses 1-6 (Docket No. 60); (2) Plaintiff Edge Construction, LLC's Motion for Partial Summary Judgment (Docket Nos. 61 and 65 - Filed under Restriction); and (3) Defendant Owners Insurance Company's Motion for Summary Judgment, or in the Alternative, Motion for Determination of Law (Docket No. 62).  Defendant filed Responses to the first two motions (Docket Nos. 77 [Response to 65] and 92 [Response to Docket No. 61]), and Plaintiff filed a combined Reply (Docket No. 80) in support of its two motions as well as a Supplemental Reply (Docket No. 96) in support of Docket Nos. 61 and 65.  Plaintiff filed a Response (Docket No. 75; exhibits in support Docket No. 76) to defendant's motion (Docket No. 62), defendant filed a Reply (Docket No. 81), and with leave of court (Docket No. 83) plaintiff filed a Sur-reply (Docket No. 90 - filed under restriction).

The court has very carefully reviewed and considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file.  The court now being fully informed makes the following findings, conclusions of law, and order.

**Plaintiff's Allegations**

This action was removed from Arapahoe County District Court.  (See Docket No. 1).  There were originally two plaintiffs in this action, Sable Cove Condominium Association ("Sable Cove") and Edge Construction, LLC ("Edge" or "plaintiff"), which was the contractor that completed construction at the condominium community. Pursuant to orders by this court (Docket Nos. 25 and 28) on defendant's Partial Motion to Dismiss (Docket No. 12) and plaintiffs' Motion for Voluntary Dismissal (Docket No. 26), only Edge remains as a plaintiff, Edge's common law bad faith claim was

3

dismissed, and only two claims remain.  The remaining claims are breach of contract and statutory bad faith pursuant to §§ 10-3-1113(3), 1115, 1116, C.R.S.  These claims are based upon damage from a hail and wind storm on June 6, 2012, for which Sable Cove filed an insurance claim with its insurer, defendant Owners Insurance Company ("defendant").  Plaintiff alleges the following in the Complaint (Docket No. 4).

Defendant investigated the loss and agreed to pay for it.  Defendant's field adjuster calculated the loss in an estimate that included an overhead and profit charge of $153,417.02,[1] for a total estimate of $891,963.66, not including the cost of the permits the defendant agreed to pay.  Sable Cove contracted with Edge to complete the roof repairs according to the defendant's estimate.  Edge completed the work, but defendant's in-house adjuster then refused to pay the overhead and profit charges.  As a result, Edge was not paid $153,417.02 due under its contract with Sable Cove.  Defendant in bad faith unreasonably denied this portion of Sable Cove's claim.  Both Sable Cove and Edge complained to defendant about this wrongful failure to pay.

On February 7, 2014, Sable Cove and Edge entered into a Post-Loss Assignment of Insurance Proceeds wherein Sable Cove assigned to Edge its unpaid, post-loss policy benefits of $153,417.02 for the subject overhead and profit for the work that has already been completed.  (See Ex. B to Compl., Docket No. 4).  In addition, Edge qualifies as a "first-party claimant" under § 10-3-1115, C.R.S., and is entitled to sue defendant under § 10-3-1116, C.R.S.

**Summary Judgment Standard**

---

[1] The general contractor overhead and profit is overhead and profit in addition to that typically included in each line item of a project's estimate.

4

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). When reviewing a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party. McBeth v. Himes, 598 F.3d 708, 715 (10th Cir. 2010).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any

significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

**Discussion**

As correctly asserted by defendant, the first dispositive motion before the court, Plaintiff Edge Construction, LLC's Motion for Partial Summary Judgment on Defendant's Affirmative Defenses 1-6 (Docket No. 60), may be quickly disposed of because Edge failed to provide any evidentiary support for its claim that it is entitled to judgment on defendant's first six affirmative defenses. Instead, Edge merely recites a narrative over three pages long of what it characterizes as "undisputed facts" without citing any factual or evidentiary support. In addition, for each of the six affirmative defenses, plaintiff merely moves for summary judgment based upon a conclusory claim of defendant's "lack of evidence."[2] Edge failed to identify those portions of the pleadings, depositions,

---

[2]The court notes that unlike in Texas, where two of Edge's counsel are located, this court does not have a "no-evidence" summary judgment rule (see Tex. R. Civ. P. 166a(i)) that allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.

6

interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial.  Furthermore, it appears that Edge's narrative "undisputed facts" includes arguments of counsel.  Moreover, in response, defendant pieced through Edge's narrative and has detailed statements it submits are disputed (Docket No. 77 at 4-11) and its statement of undisputed facts (Docket No. 77 at 11-18) (and unlike Edge, cited evidentiary support).  For these reasons, the court finds that Edge has not shown that entry of summary judgment for Edge on affirmative defenses one through six is appropriate, and thus Docket No. 60 shall be denied.

In the next dispositive motion (Docket No. 62), defendant seeks summary judgment on two grounds.  For the reasons stated below, and substantially for the reasons stated in the defendant's motion (Docket No. 62) and Reply (Docket No. 81), the court finds that summary judgment should be entered for defendant based on one of those grounds, namely, on defendant's affirmative defense of failure to cooperate.  Therefore, in the interest of judicial economy, the court will not address the other ground for summary judgment raised by defendant, nor will the court address defendant's alternative relief for a determination of law or plaintiff's Motion for Partial Summary Judgment (Docket Nos. 61 and 65) in which Edge also seeks a determination of a question of law.

It is undisputed that the insurance policy required the insured, Sable Cove, to cooperate with defendant in its investigation and settlement.  (See Docket No. 77-44 at 3 ("E. LOSS CONDITIONS . . . 3. Duties In The Event Of Loss Or Damage . . . 8. Cooperate with us in the investigation or settlement of the claim.")).  Under Colorado

law, [r]ecovery under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer 'in some material and substantial respect.'" Hansen v. Barmore, 779 P.2d 1360, 1364 (Colo. 1989). "Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court." Id. (citing Farmers Automobile Inter-Ins. Exchange v. Konugres, 202 P.2d 959 (1949)). "However, if . . . the record can produce no other result, [the court] may determine the issue of non-cooperation as a matter of law." Id. Such is the case here.

Sable Cove condominiums suffered property damage caused by a storm on June 6, 2012. Thereafter, Sable Cove retained D.G.A. - David Greeson Adjusters, Ltd. ("D.G.A."), to act as its public adjuster. (See Docket Nos. 62-2, 75-3, Contract and Agreement for Representation). D.G.A. General Manager Peter Ridulfo then sent a letter to the defendant, dated July 16, 2012, instructing that "all communications and correspondence be directed through our offices as requested in our notice or [sic] representation . . .." and that "the insured's agent be informed that she is not to contact the insured regarding this claim. All communications are to come through our offices." (Docket No. 62-9).

On September 6, 2012, Keith Gilbert, an independent adjuster retained by defendant, forwarded to Sable Cove through D.G.A. an estimate of damage in the amount of $891,963.66, which included general contractor's overhead and profit (which was in addition to the overhead and profit typically included in each line item). That estimate, however, very clearly states, "This is a **draft** estimate for review only and **has**

**not been reviewed or authorized by** CSI (Gilbert's employer) or **[defendant]**." (Docket No. 81-1 at 2) (emphasis added). Furthermore, that document is marked in several readily-observable places as "SABLE_COVE_**DRAFT**." (Docket No. 81-1) (emphasis added). Nevertheless, the following day, on September 7, 2012, Sable Cove signed a contract with Edge for the roofing project.[3] (Docket Nos. 62-4, 75-4).

Under the terms of that contract, the "agreement [was] for <u>FULL SCOPE OF INSURANCE PROCEEDS</u> and [was] subject to insurance company approval. This agreement does not obligate homeowners or Edge Construction, LLC, unless repairs are approved by homeowner's insurance company. . . . The final amount agreed to between homeowner's insurance company and Edge Construction, LLC, shall become the final contract price. . . ." (Docket No. 62-4) (emphasis in original).

The estimate approved by defendant - marked as "SABLE_COVE_REVISED" - obviously did not include general contractor overhead and profit. (Docket No. 81-2). In addition, the "Large Loss Final Report," which states that it was revised on September 28, 2012, specifically noted the following revision: "Supervision at [defendant] Home Office has directed the removal of contractors' overhead and profit from this claim. This report, the estimate, and supporting documentation have been altered in accordance with the changes as directed by [defendant]." (Docket No. 81-4).

On October 17, 2012, Ryan Larson, defendant's in-house adjuster, sent Sable

---

[3]Both Dustin Greeson at the 30(b)(6) deposition of Edge and Ridulfo of D.G.A. testified that D.G.A. and Edge are "owned" by David Greeson. (Docket No. 62-3 at 4, Ridulfo Trans. at 78; 62-5 at 2, Greeson Trans. at 27). See Docket No. 75-1 at 3, ¶ 14 (Ridulfo Aff. stating "[w]hile David Greeson does own both DGA and Edge, they are separate legal entities . . . .").

Cove a Proof of Loss form in the amount of $779,173.34, which did not include the general contractor's overhead and profit.  According to Ridulfo, Larson advised him that Sable Cove had to sign the proof of loss that defendant drafted before defendant would make any payments to Sable Cove.  (Pl.'s undisputed fact no. 6 - Docket No. 75 at 3; not disputed by defendant - Docket No. 81 at 4).  D.G.A. submitted a Proof of Loss dated October 18, 2012, but allegedly without informing defendant, inserted language in the middle of a paragraph on the form that "the insured acknowledges that elements of the claim remain in dispute and this proof of loss will be supplemented; the dispute includes but is not limited to overhead and profit."  Both Proof of Loss forms included the same language at the conclusion of that paragraph that "any other information that may be required will be furnished and considered a part of this proof."  (Compare Docket Nos. 75-5 and 77-21).

Defendant then issued a check to Sable Cove and D.G.A. dated October 24, 2012, in the amount of $562,666.02. (Docket No. 75-6).  Notwithstanding the dispute that was noted in the inserted language of the Proof of Loss, repairs were then done at Sable Cove, which were completed in late November 2012.  (See Docket No. 62-14 - stating project took almost two months and was completed on November 24, 2012).  Apparently D.G.A. provided defendant with an invoice on December 16, 2012, for withheld funds.  (See Docket No. 77-19 at 1).  Thereafter, defendant paid Sable Cove only an additional $214,008.32 on January 15, 2013 (Docket No. 75-8), which was the recoverable depreciation total, the difference between the Replacement Cost Value and the Actual Cost Value.  (See Docket No. 75-5).  The general contractor overhead and profit was not paid.

10

In a letter dated July 31, 2013, to Larson, Ridulfo requested a copy of defendant's guidelines for its adjusters and an immediate release of all funds (the general contractor's overhead and profit).  (Docket No. 77-19).  In a response letter dated August 16, 2013, defendant's Field Claim Representative Michael E. Sankey noted that Gilbert's estimate was not approved by defendant; that the estimate that was approved was sent to Ridulfo along with the Proof of Loss in the amount of $779,174.34; that the signed Proof of Loss was signed on October 18, 2012, by Ridulfo; that defendant had paid $776,674.34; and that no additional payments would be made.  (Docket Nos. 75-10, 77-20).  Finally, Sankey stated, "[I]f there is any additional information you believe to be relevant, or if you believe any of the facts or information stated are not accurate, upon which [defendant] has relied, please advise us."  (Docket Nos. 75-10, 77-20).

Ridulfo then e-mailed Sankey on August 21, 2013, noting the language he had added to the Proof of Loss supplied by defendant.  He then gave defendant additional time to review the "mistaken opinion that the proof did not include anything additional."  (Docket No. 77-23).  Two days later, Sankey e-mailed Ridulfo, stating, "In response to your recent email requesting consideration for overhead and profit.  Please provide the contract between the general contractor and the insured.  **Please provide the contracts between the sub-contractors and the general contractor to include scope of work completed.**"  (Docket No. 62-10) (emphasis added).

Significantly, Ridolfo responded later that day, expressly denying the "request for any new documents without substantiation of their required production under the terms

11

of your contract with the insured, or the production of [defendant's] claim handling guidelines of which access is still denied to your insured. . . ." (Docket No. 62-11). At his deposition, Ridulfo admitted that he did not provide copies of the requested invoices for the subcontractors. (Docket No. 62-3 at 3; Deposition Transcript of Peter T. Ridulfo, D.G.A., at 34, lines 18-20). He testified that "[i]t was – at that point, it was just a stalling tactic; it was just a way–but they also asked for the contract with the general contractor and the insured. They wanted that. They already had that for a year. So at this point, it was just – this was at the very end. It was just an intentional–they were intent–intentionally trying to just deny it and delay and every – everything." (Docket No. 62-3 at 3, Trans. at 34, line 21, to 35, line 4). When asked if it was correct that defendant made a request and Sable Cove did not comply with that request, Ridulfo testified, "We already did comply with the request for the contract. . . . Which they received the general contract that – we were being asked to provide it again. Also, we were being asked things on items that were irrelevant to whether or not the claim gets paid. Overhead and profit should be paid at the front end on a - on the actual cash value part of it. To require needs of subcontractors that weren't even part of it would just overwrite that whole thing. I mean, overhead and profit is override from the beginning, and what was going on at this point, this was right at the very end, where it was going through litigation, and what was going on then was just to delay it. There was no – it was unreasonable delay, and they just weren't going to pay it." (Docket No. 62-3 at 3, Trans. at 35, line 14, to 36, line 8). He also testified that the request was "unreasonable" because "[t]hey're asking the insured for something he has no access to . . . ." (Docket No. 62-3 at 3, Trans. at 36, lines 24-25). However, he further testified

12

that Sable Cove could have asked the general contractor (Edge) for copies of the subcontract and agreed that the duty to cooperate includes the duty to assist in obtaining information that is reasonably obtainable for the insured. (Docket No. 81-5 at 2, Ridulfo Trans. at 37, lines 7-18).

The undisputed evidence shows that during the claims process defendant made a request for information from the insured, Sable Cove, through D.G.A., that was not only material but key to the claims issue in dispute, namely, whether general contractor overhead and profit was warranted. Defendant had not approved the draft estimate that had included the extra general contractor overhead and profit, and when Sable Cove, through Ridulfo, persisted that such general contractor overhead and profit was warranted, defendant, through Sankey, stated, "[I]f there is any additional information you believe to be relevant, or if you believe any of the facts or information stated are not accurate, upon which [defendant] has relied, please advise us." Ridulfo, however, did not respond with any information or documentation to show that overhead and profit was warranted but instead merely e-mailed Sankey back, noting the language that Ridulfo had added to the supplied Proof of Loss[4] and giving defendant additional time to review the "mistaken opinion that the proof did not include anything additional." (Docket No. 77-23). That is when defendant requested documentation concerning the subcontractors for the project, and Ridulfo undisputably refused to provide that information despite the obligation to do so under the terms of the insurance policy. With

---

[4]The Proof of Loss form submitted by Ridulfo kept the language contained in the form provided to him by defendant that "any other information that may be required will be furnished and considered a part of this proof." (Compare Docket Nos. 75-5 and 77-21).

13

regard to his refusal, Ridulfo testified that they were being asked things on items that were "irrelevant" to the claim. However, the information/documentation sought by defendant went to the heart of the question of whether the project was complex and thus whether the extra general contractor overhead and profit sought were warranted.

Furthermore, defendant has irrefutably shown that such refusal to cooperate substantially disadvantaged defendant in material respects. That refusal precluded defendant from learning during the claims process the identities of the subcontractors, the number of subcontractors and/or trades purportedly used on the project, and the scope of their work, all of which goes to the crux of the issue of whether this was a complex job warranting the extra overhead and profit sought by Edge or just a "roof job straight up." (See Docket No. 75-11 at 1). Defendant has shown that a lot of the information that should have been made available to defendant during the claims process is no longer available or in existence. Defendant finally obtained a list of the 14 or more purported "trades" from Edge during the course of this litigation in November 2014, before the 30(b)(6) deposition of Edge, which was two years after the roofing job was done. (Docket No. 62-14).[5] As detailed in its motion and shown in its exhibits, when defendant attempted to subpoena contracts, invoices, and other relevant documents from these entities directly, it learned that several may no longer exist, some could not be served because there were no addresses to do so, some disclaimed any

---

[5] The numerous "trades" purportedly utilized for the project included three roofing companies (Affordable Roofing, Best Bet Roofing, Meraz Roofing); The Painter Ltd. for painting and repairs (that defendant claims was not part of the estimate); a person (Colin McDonald) for daily OSHA compliance meetings and inspections; DirecTV to reset and realign satellite dishes; companies to assist with notifying residents; and entities that merely supplied materials, portable toilets, equipment, and dumpsters.

14

involvement with the Sable Cove project, and some no longer have records.

Edge asserts in its Response that it had no duty to cooperate with defendant because Sable Cove, not Edge, was the insured.  However, while Edge itself did not have the duty to cooperate, here Edge is operating under an assignment for the breach of contract claim and thus stands in the shoes of Sable Cove, see Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co., 373 F.3d 1100, 1110 (10th Cir. 2004) (citing Tivoli Ventures, Inc. v. Bumann, 870 P.2d 1244, 1248 (Colo. 1994)); Farmers Acceptance Corp. v. DeLozier, 496 P.2d 1016, 1018 (1972), which, through D.G.A., failed to cooperate in a material and substantial way.

While Edge asserts that failure to cooperate is a defense to its breach of contract claim and not to its bad faith claim, this court agrees with defendant that in order to prevail on its statutory unreasonable delay/denial claim, Edge first has to prove entitlement to benefits.  There are no benefits owed under the policy, however, if the insured failed to cooperate.  See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co., 558 F.3d 1184, 1192-93 (10th Cir. 2009) ("Having concluded that the insurance companies' denial of coverage was proper as a matter of law, we must also affirm the district court's grant of summary judgment in their favor on [the plaintiff's] bad faith claim."); Fatell v. Stewardt Title Guarantee Co., 2009 WL 3158166, at *9 (D. Colo. Sept. 24, 2009) (plaintiff's bad faith claim necessarily fails because his breach of contract claim fails); Pompa v. American Family Mut. Ins. Co., 506 F. Supp.2d 412, 418 (D. Colo. 2007) ("Because I find that there is no breach of contract, I also find that Defendant is entitled to summary judgment as to [plaintiff's] claim for bad faith breach of contract.").

**WHEREFORE,** for the foregoing reasons, it is hereby

15

**ORDERED** that Plaintiff Edge Construction, LLC's Motion for Partial Summary Judgment on Defendant's Affirmative Defenses 1-6 (Docket No. 60) is **DENIED**.  It is further

**ORDERED** that Plaintiff Edge Construction, LLC's Motion for Partial Summary Judgment (Docket Nos. 61 and 65 - Filed under Restriction) is **DENIED**.  It is further

**ORDERED** that Defendant Owners Insurance Company's Motion for Summary Judgment, or in the Alternative, Motion for Determination of Law (Docket No. 62) is **GRANTED**.  Judgment shall enter for the defendant and against the plaintiff Edge. Defendant shall have its costs.  It is thus further

**ORDERED** that all pending pretrial motions (namely, Docket Nos. 85, 86, 88, 100, 101, 102, 103, 104, 105, 106, 107, and 108) are **DENIED AS MOOT**.  It is further

**ORDERED** that the Trial Preparation Conference set on September 10, 2015, at 9:00 a.m. and the jury trial set for October 5, 2015, at 9:00 a.m. are **VACATED**.  It is further

**ORDERED** that the Clerk shall enter final judgment in accordance with this Order and shall terminate this case.


Date:  June 29, 2015                             s/ Michael J. Watanabe
       Denver, Colorado                          Michael J. Watanabe
                                                 United States Magistrate Judge